| | |
|---|---|
| RODNEY WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>SENTEL CORPORATION, PAUL TOM, individually and in his capacity as a supervisory employee of SENTEL; JOHN AND JANE DOES (1-10), supervisors, employees, agents, heirs, assigns and managers of SENTEL Corporation, who participated in any decisions concerning the employment actions regarding Rodney Williams,<br><br>    Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY - CAMDEN<br>DOCKET NO. 1:16-cv-01554-JHR-JS<br><br><br>CIVIL ACTION |

**REPLY BRIEF OF DEFENDANTS SENTEL CORPORATION AND PAUL TOM
IN SUPPORT OF THEIR MOTION TO DISQUALIFY
PLAINTIFF'S COUNSEL AND FOR A PROTECTIVE ORDER**

**MOTION RETURN DATE: August 1, 2016**

                                                DALY, LAMASTRA, CUNNINGHAM,
                                                KIRMSER & SKINNER
                                                Attorneys for Defendants
                                                SENTEL Corporation and Paul Tom

On the Brief: Ellen M. Boyle

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ........................................................................................................1

Legal Argument ..................................................................................................................1

    PLAINTIFF'S COUNSEL SHOULD BE DISQUALIFIED BECAUSE HE IS IN A POSITION TO USE PRIVILEGED INFORMATION PROVIDED DURING HIS *EX PARTE* INTERVIEW WITH SENTEL'S FORMER VICE PRESIDENT OF HUMAN RESOURCES ........................................................................................................1

CONCLUSION ...................................................................................................................6

## **TABLE OF AUTHORITIES**

**Cases:**

*Camden v. State of Maryland*, 910 F. Supp. 1115 (D. Md. 1996) .................................................3

*Cardona v. Gen. Motors Corp.*, 942 F.Supp. 968 (D.N.J. 1996) .................................................2

*Cordy v. Sherwin Williams*, 156 F.R.D. 575 (D.N.J. 1994) .........................................................3

*Essex Cty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418 (D.N.J. 1998) ...........................2

*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) ...............................................................3, 4

*Kaselaan & D'Angelo Assoc., Inc. v. D'Angelo*, 144 F.R.D. 235 (D.N.J. 1992) ..........................3

*Martin v. AtlantiCare,* No. CIV. 10-6793 JHR/JS, 2011 WL 5080255 (D.N.J. Oct. 25, 2011) .....2

*Maldonado v. New Jersey ex rel. Admin Office of Courts=Prob. Div.*, 225 F.R.D. 120 (D.N.J. 2004) ................................................................................................................... 2, 3, 4, 5, 6

*Stengart v. Loving Care Agency, Inc.*, 201 *N.J.* 300 (2010) .......................................................4, 5

*United States v. Voigt*, 89 F.3d 1050 (3d Cir.), *cert. denied,* 519 U.S. 1047 (1996) .....................2

*Williams v. Trans World Airlines, Inc.*, 588 F.Supp. 1037 (W.D.Mo. 1984) ................................6

**Rules:**

4.2 ..................................................................................................................................... 1, 4, 6

4.4 ................................................................................................................................................4

**PRELIMINARY STATEMENT**

Defendants SENTEL Corporation and Paul Tom submit this brief in reply to plaintiff Rodney Williams' opposition brief and in further support of defendants Motion to Disqualify plaintiff's current counsel, Robert L. Travers, Jr. Esq. and seeking a protective order prohibiting further contact with SENTEL's former Vice President of Human Resources, Dina Evans. Significantly plaintiff's opposition to defendants' Motion to Disqualify does not dispute that not only was Ms. Evans was a member of the litigation control group but also that Ms. Evans was responsible for and directed SENTEL's defense of the plaintiff's EEOC charge. Plaintiff also does not dispute that Ms. Evans was privy to attorney client privileged information. Indeed, it would be impossible for plaintiff to dispute this since during Ms. Evans' video-taped statement with plaintiff's counsel, she refers to attorney client communication and attorney work product. Under such circumstances disqualification of plaintiff's current counsel is plainly warranted.

**LEGAL ARGUMENT**

**PLAINTIFF'S COUNSEL SHOULD BE DISQUALIFIED BECAUSE HE IS IN A POSITION TO USE PRIVILEGED INFORMATION PROVIDED DURING HIS *EX PARTE* INTERVIEW WITH SENTEL'S FORMER VICE PRESIDENT OF HUMAN RESOURCES**

Plaintiff's opposition to defendants' motion ignores one key fact: Ms. Evans is not simply a former employee of SENTEL. Rather she was the SENTEL senior executive given the task of defending the Company against Mr. Williams' EEOC Charge. Accordingly she was central to determining SENTEL's legal strategy and decisions regarding the defense of plaintiff's Charge.

Plaintiff's counsel, Robert Travers attempts to demonstrate that his *ex parte* communications with Ms. Evans did not violate Rule 4.2 by citing to cases which purportedly

establish a rule that *ex parte* communications with former employees, such as Ms. Evans, are permissible if that employee disavows representation of the corporation's attorney. See Plaintiffs' Opposition at pgs. 8-9. However, in none of these cases did a court hold that opposing counsel was permitted to conduct *ex parte* interviews of a former executive manager of a corporate defendant who, like Ms. Evans was privy to attorney-client confidences or work product materials directly relating to the defense of plaintiff's discrimination claims.

Plaintiff attempts to distinguish the cases cited in defendants' brief in support of their motion to disqualify by arguing that the Rules of Professional conduct differ in those jurisdictions so that the rulings of those courts are not significant to this matter. However, as this Court has found "[t]he decision whether to disqualify a law firm by imputation is best undertaken on a case-by-case basis, weighing the facts as they exist at the time the motion to disqualify is made. New Jersey courts have consistently eschewed *per se* rules of disqualification, stressing the 'fact-sensitive nature' of a decision to disqualify counsel." *Martin v. AtlantiCare*, No. CIV. 10-6793 JHR/JS, 2011 WL 5080255, at *2 (D.N.J. Oct. 25, 2011) quoting, *Cardona v. Gen. Motors Corp.*, 942 F.Supp. 968, 976 (D.N.J.1996).  Moreover, "disqualification of an attorney need not be predicated upon a finding that a specific RPC rule has been violated. *Essex Cty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 439 (D.N.J. 1998) citing *United States v. Voigt*, 89 F.3d 1050, 1076 n. 12 (3d Cir.), *cert. denied*, 519 U.S. 1047, 117 S.Ct. 623, 136 L.Ed.2d 546 (1996). Accordingly, the Court is not precluded from reviewing decisions in other jurisdictions to guide it where the facts are similar to this matter although the rules of professional conduct differ slightly.

Disqualification of an attorney is generally warranted where an attorney is at least potentially in a position to use privileged information concerning the other side.  See *Maldonado*

*v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 130-31 (D.N.J. 2004); *Cordy v. Sherwin-Williams*, 156 F.R.D. 575, 583 (D.N.J. 1994).  There is no requirement that that there be bad faith on the part of the attorney but rather, any conduct that merely suggests that one side might enjoy the disclosure of confidential information warrants disqualification. See, e.g., *Hull v. Celanese Corp.*, 513 F.2d 568, 571-72 (2d Cir. 1975). Furthermore, "any doubt is to be resolved in favor of disqualification." *Id. See also  Kaselaan & D'Angelo Assoc., Inc. v. D'Angelo,* 144 F.R.D. 235, 238 (D.N.J.1992).

Although research has disclosed no similar situations in New Jersey, both the Maryland District Court and the Second Circuit have ruled in favor of disqualification when employees involved in defending a company against EEOC charges later "switch sides" to accuse an employer of discrimination.  As addressed in defendants' brief in support of the motion, in *Camden v. State of Maryland*, 910 F. Supp. 1115, 1116-17 (D. Md. 1996) plaintiff's attorneys was disqualified after *ex parte* contact with the defendants' former employee investigated plaintiff's allegations of race and age discrimination.  Similarly in *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir.1975), the Second Circuit affirmed the trial court disqualifying a law firm, where an in-house attorney at Celanese Corporation who had actively participated in the defense of an EEOC charge filed by the plaintiff, later left the company and intervened in the law suit filed by plaintiff using the same attorney.  The Court found that the plaintiffs' law firm should have declined to represent the former in house attorney because the firm had notice that the former in house attorney had worked on defending the EEOC charge of its client.  The court rejected the plaintiffs' law firm argument that it had cautioned the former in house attorney not to reveal any information received in confidence as an attorney, finding it was not necessary to

demonstrate that the former in house attorney passed on confidential information because such is "presumed." *Id.* at 572.

Although this case differs somewhat from *Hull* because Ms. Evans is not an attorney, the rationale of the Second Circuit is equally applicable. Ms. Evans was the person at SENTEL given the task of working with outside counsel to defend Mr. Williams' EEOC charge. There is also no doubt that Ms. Evans discussed with Mr. Travers privileged information since during the video-taped statement she refers to discussions with SENTEL's attorney and work product protected documents. Significantly nowhere in plaintiff's opposition to the motion to disqualify does Mr. Travers certify that he cautioned Ms. Evans not to disclose privileged communications although he must have been aware that Ms. Evans had such communications since she referred to them during the interview with Mr. Travers.

Even if Mr. Travers is correct that Rule 4.2 does not bar his interviewing Ms. Evans, as soon as he learned that she was disclosing privileged information he should have immediately ended the interview. Indeed, this situation is analogous to counsel's obligations under *RPC* 4.4(b) (b) which provides:

> A lawyer who receives a document and has reasonable cause to believe that the document was inadvertently sent shall not read the document or, if he or she has begun to do so, shall stop reading the document, promptly notify the sender, and return the document to the sender.

RPC 4.4(b). This rule is designed to protect attorney client communications and the work product of attorneys. *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 130-31 (D.N.J. 2004).

Once again, there does not have to be a finding of bad intention to support a disqualification of an attorney in receipt of attorney client privileged or work product material of another party. In *Stengart v. Loving Care Agency, Inc.,* 201 *N.J.* 300 (2010), plaintiff brought

4

suit against her former employer, alleging discrimination. The defendant retrieved messages on plaintiff's work-issued laptop computer that the plaintiff had exchanged with her lawyer. *Id.* Two attorneys from the firm representing the defendant reviewed the e-mails, but did not inform the plaintiff's counsel about them until several months later. *Id.* at 310. The plaintiff's attorney demanded that the defendant's attorneys identify and return all privileged communications in their possession but defendant's attorneys refused claiming the privilege had been waived. *Id.* The New Jersey Supreme Court determined the e-mails were privileged and remanded the matter back to the trial court to determine if the Firm should be disqualified holding:

> To be clear, the Firm did not hack into plaintiff's personal account or maliciously seek out attorney-client documents in a clandestine way. Nor did it rummage through an employee's personal files out of idle curiosity. Instead, it legitimately attempted to preserve evidence to defend a civil lawsuit. Its error was in not setting aside the arguably privileged messages once it realized they were attorney-client communications, and failing either to notify its adversary or seek court permission before reading further. There is nothing in the record before us to suggest any bad faith on the Firm's part in reading the Policy as it did. Nonetheless, the Firm should have promptly notified opposing counsel when it discovered the nature of the e-mails.

Once an adversary's confidences are passed to the opposing attorney it is difficult if not impossible to determine the prejudice to one party or advantage to the other party. Indeed "[s]elf-serving affidavits of counsel and others are not helpful because of their undeniable interest in preserving any tactical advantage they may have garnered." *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.,* 225 F.R.D. 120, 137 (D.N.J. 2004). Where undisputed facts indicate that an adversary had been provided access to attorney client privileged communications, there is a "taint" on any future proceedings. As the Court stated in *Maldaonado*, "a reasonable member of the bar or the public would share ... the nagging suspicion that [the opposition's] trial preparation and presentation of their case had benefitted

5

from confidential information obtained." *Id*. at 141, Citing *Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1045 (W.D.Mo.1984).

Litigation is supposed to be a fair fight, waged within the context of ethical rules. Mr. Travers' *ex parte* interview of Ms. Evans knowing that she likely was privy to attorney client communications was at best questionable. However, once Ms. Evans began referring during the video tape interview to attorney client communications and work product privileged documents, the *ex parte* interview should have immediately ceased. The failure to do so has created an incurable violation of Mr. Traver's ethical obligations to the prejudice of defendants that cannot be countenanced. Having so definitively violated his ethical obligations, Mr. Travers must not be permitted to continue his representation of plaintiff and profit from information undeniably obtained in violation of Rule 4.2. This bell cannot be unrung.

## CONCLUSION

Based upon all of the foregoing reasons and those set forth in defendants brief filed on June 30, 2016, it is respectfully requested that the Defendants' application to disqualify Plaintiff's counsel be granted. Additionally, Plaintiff's counsel should be directed to turn over all copies of his communications with Dina Evans and to delete all record of them.

                        Respectfully submitted,
                        DALY, LAMASTRA, CUNNINGHAM,
                        KIRMSER & SKINNER
                        Attorneys for Defendants
                        SENTEL Corporation and Paul Tom

By:_____
                        Ellen M. Boyle

Dated: July 25, 2016